**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER QUICK, et al., | |
| Plaintiffs, | Civil Action No. 17-5595 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| TOWNSHIP OF BERNARDS, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Township of Bernards ("Township"), Township of Bernards Township Committee ("Committee"), and Township of Bernards Planning Board's ("Planning Board") (collectively, "Defendants") motion to dismiss Plaintiffs Christopher Quick and Loretta Quick's ("Plaintiffs") Amended Complaint. (ECF No. 24.) Plaintiffs opposed, (ECF No. 26), and Defendants did not file a reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is denied.

## I. BACKGROUND[1]

### A. ISBR Litigation

On April 20, 2012, the Islamic Society of Basking Ridge ("ISBR") sought approval for construction of a mosque in the Township[2] by submitting an application to the Planning Board[3] ("Application"). (Am. Comp. ¶ 21, ECF No. 17.) After thirty-nine public hearings, during which citizens provided broad-based commentary regarding the Application, on December 8, 2015, the Planning Board denied the Application and on January 19, 2016, adopted a written resolution memorializing the same. (*Id.* ¶¶ 22-24.) On March 10, 2016, ISBR and Mohammed Ali Chaudry instituted litigation against Defendants and others, styled as *The Islamic Society of Basking Ridge and Mohammed Ali Chaudry v. Township of Bernards et al.*, Case No. 3:16-cv-01369 in the United States District Court for the District of New Jersey ("ISBR Litigation"), challenging the denial of the Application. (*Id.* ¶¶ 1, 25.)

### B. Settlement Agreement and Order

The parties ultimately entered into a Settlement Agreement in the ISBR Litigation on May 23, 2017 (*id.* ¶¶ 25-26) and requested that this Court enter an order incorporating the Settlement Agreement's terms, making it "fully enforceable as an order of the Court" (*id.* ¶ 27). The Court entered the order on May 30, 2017 ("Settlement Agreement and Order"). (*Id.*) Thus, Defendants

---

[1] For the purpose of this motion to dismiss, the Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal citation omitted)).

[2] The Township "is a municipal entity organized under the laws of the State of New Jersey" and "a municipal corporation." (Am. Compl. ¶ 13.)

[3] The Planning Board "is a governmental board of the Township with various responsibilities," including oversight of land use. (*Id.* ¶ 15.)

2

are "responsible for the creation, adoption, and enforcement of the Settlement Agreement and its being made enforceable as a federal court order." (*Id.* ¶ 59.)

The Settlement Agreement and Order set forth the procedures described in this section, among other things. (*See id.* ¶¶ 28-34.) Pursuant to the Settlement Agreement and Order, ISBR must submit to Township officials a "Site Plan" to be used "for construction of a mosque and accompanying utility and architectural plans" within twenty-five days of the effective date. (*Id.* ¶ 28.) The Township then has twenty days to review the Site Plan ("Review Period"), but must provide ISBR with any comments on or prior to the tenth day of the Review Period. (*Id.* ¶ 29.) During the ten days following the Review Period, ISBR must submit to the Planning Board a final Site Plan, and the Planning Board must hold a public hearing to approve the Site Plan ("Special Meeting"). (*Id.* ¶ 30.) "Defendants and ISBR agreed to waive a Township rule related to the notice requirements for submission of the Site Plan prior to holding the Special Meeting and have also agreed to hold the Special Meeting within only fifteen days of it being submitted to the Planning Board." (*Id.* ¶ 31.) Ten days before the Special Meeting, ISBR—not Defendants—must provide public notice of the Special Meeting, including sending notice to any owners of real property located within a two-hundred-foot radius of the mosque site ("Interested Party"). (*Id.* ¶ 34.) Additionally, the Special Meeting would consist of only one hearing, during which Defendants will consider and vote on the Site Plan. (*Id.* ¶ 32.)

### C. Plaintiffs' Claims

Plaintiffs are Interested Parties. (*Id.* ¶¶ 11-12; *see id.* 35-36.) Plaintiffs initiated the instant case on July 31, 2017 and requested entry of a preliminary injunction to enjoin the Special

3

Meeting.[4] (*Id.* ¶¶ 41-42.) The Court denied Plaintiffs' request for a preliminary injunction and on August 8, 2017, the Special Meeting was held as scheduled. (*Id.* ¶¶ 33, 42.) Plaintiffs allege that the terms of the Settlement Agreement and Order prevented them from "making any commentary regarding Islam or Muslims" at the Special Meeting.[5] (*Id.* ¶¶ 1, 11-12.) Plaintiffs' Amended Complaint, filed August 22, 2017, brings claims against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. (*Id.* ¶ 1.) Plaintiffs allege that Defendants' action, through the Settlement Agreement, is unconstitutional because it: (i) "suppresses speech based on its content and viewpoint;" (ii) "constitutes a prior restraint on protected speech;" (iii) "deprives Plaintiffs of procedural due process;" (iv) "violates the First Amendment's Establishment Clause by preferring Islam over other religions;" and (v) "violates the First Amendment's Petition Clause." (*Id.*)

The Settlement Agreement and Order provided that at the Special Meeting, Interested Parties could "provide sworn comments and cross-examine witnesses regarding the Site Plan;" however, although the Special Meeting was held to discuss the construction of a mosque, the Settlement Agreement and Order also stated that "[n]o commentary regarding Islam or Muslims will be permitted." (*Id.* ¶¶ 38-39.) Defendants provided no explanation for the inclusion of this language. (*Id.* ¶ 40.)

---

[4] After Plaintiffs moved for a preliminary injunction, Defendants proposed to revise the Settlement Agreement and Order without obtaining a court order to effectuate the revision, even though Defendants lacked authority to alter the Order without the Court's approval. (*Id.* ¶ 42.) Defendants also "opposed Plaintiffs' request that the Court strike the offending provision." (*Id.*) Plaintiffs, accordingly, allege that Defendants made "pretended conciliatory gestures" that were "belied by their vigorous efforts to preserve the prior restraint." (*Id.*)

[5] Plaintiffs state that they "have been subjected to threats and retaliation, including receiving oppressive subpoenas for information" in the ISBR Litigation as a consequence for speaking out on prior occasions. (*Id.* ¶ 37.)

4

Accordingly, Plaintiffs argue that Defendants, through the Settlement Agreement and Order, unconstitutionally censored Plaintiffs' speech based on its content and viewpoint (*id.* ¶¶ 1, 43), and that their desired speech about Islam and Muslims is related to "public issues and political matters" protected by the First Amendment (*id.* ¶¶ 3, 44). Plaintiffs contend that various factors "unique to Islam, affect the land use of the proposed mosque and affect the citizens of [the] Township, including Plaintiffs, and are therefore highly germane to the issues to be presented to the Planning Board" and relevant for discussion at the Special Meeting. (*Id.* ¶¶ 45, 48-49.) Plaintiffs assert that Islam involves prayer at multiple different times (*see id.*), including: five times per day; during Jumma, the Friday afternoon service and most significant service of the week; evening prayers during Ramadan; and during holidays and funerals (*id.*). In addition, traffic congestion is different on Friday afternoons than on Sundays, the day of Christian services. (*Id.* ¶ 16.) Moreover, "the amount of use given to a building" and the frequency of the services held is pertinent to its design and adjacent infrastructure, particularly when neighborhood zoning laws are being revised in connection with the project. (*Id.* ¶ 47.)

At the Special Meeting, Plaintiffs wanted to provide comments and cross-examine witnesses "regarding the impact that the proposed Islamic mosque and Islamic worship practices would have on their home and neighborhood, including but not limited to: general zoning issues, daily traffic control patterns, road construction, ordinance enforcement, water and sewage management, neighborhood aesthetics, and parking management." (*Id.* ¶ 50.) According to Plaintiffs, "[a]ll of these matters are addressed by the Settlement Agreement and Order." (*Id.*) "Plaintiffs were afraid to [discuss these issues at the Special Meeting] because of the Settlement Agreement and Order," which chilled their rights to free speech. (*Id.* ¶ 51.) Plaintiffs feared

5

"adverse legal consequences, such as being arrested or held in contempt of a federal court order...." (*Id.* ¶ 54.)

According to Plaintiffs, the Settlement Agreement and Order also favored "speech related to the religion of Islam over other religions." (*Id.* ¶ 53.) The Complaint filed in the ISBR Litigation referred to "Christians, Christianity, or Christian churches 24 times" and "the Jewish religion, Jewish people, or Jewish places of worship on 11 occasions." (*Id.* ¶¶ 52, 56.) The Settlement Agreement and Order allowed ISBR to make these statements, but Defendants prohibited comments about Islam and Muslims. (*Id.* ¶ 52.)

Moreover, Plaintiffs allege that the Settlement Agreement and Order "do not have a secular purpose" and "advance and favor the religion of Islam by forbidding commentary related to Islam and Muslims" at the Special Meeting, specifically, about construction of a mosque in variance of zoning ordinances, located near Plaintiffs' home, and attended by Muslims. (*Id.* ¶¶ 55-56.) The Settlement Agreement and Order, however, do not prevent commentary about other religions. Plaintiffs assert that the Settlement Agreement and Order "result in excessive government entanglement with religion because their enforcement requires persons acting under the color of state law to prohibit any commentary arbitrarily determined to be related to Islam and Muslims" during the Special Meeting. (*Id.* ¶ 57.)

Finally, Plaintiffs allege that "Defendants created and enforced this prior restraint by publicizing the terms of the Settlement Agreement prior to the Special Meeting, by procuring a federal court order to enforce the terms of the Settlement Agreement," and by representing to the Court that pursuant to the Settlement Agreement and Order, some comments at the Special Meeting were permitted but others were not. (*Id.* ¶ 75.)

Plaintiffs seek, *inter alia*, the following relief: (i) a declaration that Defendants are violating and threaten to violate Plaintiffs' constitutional rights; (ii) a declaration that the Settlement Agreement and Order are unconstitutional on their face; (iii) a preliminary and permanent injunction enjoining Defendants from enforcing the Settlement Agreement and Order; and (iv) damages, attorneys' fees, costs, and expenses. (*Id.* ¶¶ a-i.)

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

7

relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

### A. Section 1983

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 (Am. Comp. ¶¶ 70, 76, 82, 85) and, therefore, must allege "'that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'" *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). Section 1983 "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws[;]" it does not provide substantive rights. *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 477 (3d Cir. 2003).

### B. Parties' Arguments

#### 1. Free Speech Claims and Due Process

Defendants assert in the point heading of this section of their moving brief that even if the language in the Settlement Agreement and Order is content-based, it is a constitutionally permissible restriction furthering government efficiency. (Defs.' Moving Br. 11, ECF No. 24-14.) Later in the same section, they appear to argue that the restriction is actually content-neutral. (*See id.* at 14.) Defendants also assert, however, that the Special Meeting was a designated public

forum[6] and Defendants may limit the subject matter of such a meeting.[7] (*Id.* at 11-12.) Defendants contend that the Court should assess restrictions on speech in a designated public forum using the rules that apply to a traditional public forum: time, place, and manner restrictions are permissible, while content-based restrictions are subject to strict scrutiny. (*Id.* at 13.) Defendants also contend that all relevant comments and questions were permitted, including relevant commentary about Islam and Muslims, while irrelevant commentary was prohibited, including irrelevant commentary about other religions. (*Id.* at 14.)

Defendants further claim that the Settlement Agreement and Order was not a prior restraint because Plaintiffs were allowed to speak, and that Plaintiffs failed to define a prior restraint in their Complaint.[8] (*Id.* at 16-17.) The extent of Defendants' analysis is: "In this case, the Planning Board allowed Plaintiffs to speak and they chose to make a public statement in which they claimed they were not allowed to ask questions and make comments even though fewer than eight (8) hours

---

[6] The Court notes that, based on the facts pled, the Special Meeting actually appears to be a limited public forum, not a designated public forum as suggested by the parties, but will not make any findings at this stage. *See, e.g., NAACP v. City of Phila.*, 834 F.3d 435, 441 (3d Cir. 2016); *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011); *Eichenlaub, v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004).

[7] Defendants' briefing is confusing. For example, first Defendants state that "public entities are permitted to limit their meetings to specified subject matter," but in the very next sentence, they state that "the usual First Amendment aversion to content restrictions cannot be imported into meetings of public entities." (*Id.* at 12.)

[8] Defendants also make an unclear argument regarding lack of a controversy:

> Plaintiffs argue that the procedures for the Special Meeting constitute a prior restraint on their free speech, which creates the "controversy" that serves as the factual basis for their claims. Initially, Defendants' act of entering into the settlement agreement does not constitute a prior restraint on free speech and thus, there is no "controversy" and Plaintiffs have not suffered a harm that would give rise to a cause of action.

(*Id.* at 16.)

earlier Judge Shipp had held that they were permitted to do so." (*Id.* at 17.) Defendants do not address the due process claim.

In opposition, Plaintiffs assert that they have pled that the language at issue: (i) is a prior restraint because they were afraid to discuss Muslims and Islam at the Special Meeting, and of being held in contempt of a court order (Pls.' Opp'n Br. 15-17, ECF No. 26); (ii) constitutes content- and viewpoint-based discrimination in a designated public forum by permitting discussion of any other religion except one; and (iii) is not a permissible time, place, and manner restriction (*see generally id.* at 19-25). Plaintiffs claim that Defendants have not satisfied their burden to justify this restriction under the applicable legal frameworks. (*Id.* at 16, 25.) According to Plaintiffs, they have sufficiently pled a Due Process violation based on the deprivation of their First Amendment rights without a hearing or post-deprivation process. (*Id.* at 26-27.)

### 2. Establishment Clause

Defendants assert that no Establishment Clause violation occurred because the Settlement Agreement and Order pass the *Lemon* test. (Defs.' Moving Br. 18 (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).) The secular purpose advanced by the language, according to Defendants, was the efficient operation of the meeting; the Settlement Agreement and Order limited commentary to relevant topics; the Planning Board is prohibited from considering opinions on any religion when reviewing a land use application; and the language arose during the course of settlement negotiations, which does not create an excessive entanglement with religion. (*Id.* at 18-19.)[9]

---

[9] The entirety of Defendants' argument, excluding recitation of the legal framework, is a fourteen-line paragraph discussing all three prongs and without citation to any legal authority.

10

In opposition, Plaintiffs contend that they have sufficiently pled an Establishment Clause violation because they allege that the subsection at issue fails both the *Lemon* test and the endorsement test. (Pls.' Opp'n Br. 27-31.) As to the first prong, Plaintiffs claim: (i) that there is no secular purpose in prohibiting comments regarding one faith; (ii) that the Amended Complaint alleges that Defendants have not provided any reason why the contested provision was included; and (iii) it was unnecessary to ban commentary regarding one religion to advance the secular purpose of confining the Special Meeting to relevant subjects. (*Id.* at 28.) As to the second prong, Plaintiffs assert that as a result of the language at issue, public discussion at the Special Meeting was limited and assisted ISBR in securing approval for construction of a mosque. (*Id.* at 29.) Finally, Plaintiffs assert that there has been excessive entanglement with religion because Defendants worked with ISBR, a Muslim religious group, to draft the Settlement Agreement, which resulted in language forbidding commentary about only Muslims and Islam and assisted ISBR in constructing its house of worship. (*Id.* at 30.) Because Defendants cannot provide an explanation for this subsection, Plaintiffs assert that "the provision must be viewed as the work of a religious group seeking to curtail criticism by means of governmental power so as to obtain approval for the building of a religious structure," and is thus, entanglement. (*Id.*)

### 3. Petition Clause

Defendants assert that Plaintiffs' Petition Clause claim fails for the same reasons as their free speech claims. (Defs.' Moving Br. 21.) Additionally, Defendants assert that "Plaintiffs had knowledge that Judge Shipp had rendered an opinion that the settlement agreement would not preclude Plaintiffs from asking questions and making comments related to the ISBR's land use application" and Plaintiffs were given the opportunity to petition the government but chose not to do so. (*Id.*) Plaintiffs, however, claim that they have adequately pled a Petition Clause violation.

(Pls.' Opp'n Br. 31-32.)

### C. Analysis

The Court denied Plaintiffs' motion for a preliminary injunction on August 8, 2017. (Aug. 8, 2017 Order, ECF No. 14.) The Third Circuit has noted, however, that there are "significant differences" between the standards courts apply when considering a motion for a preliminary injunction and a motion to dismiss. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016). "[A] plaintiff's failure to meet his burden on a motion for a preliminary injunction does not mean *ipso facto* that the complaint fails to state a claim." *Id.* "On a motion for a preliminary injunction, a plaintiff bears the burden to show, among other things, 'that he is likely to succeed on the merits.'" *Id.* (quoting *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)) (citation omitted). "To withstand a motion to dismiss, on the other hand, a plaintiff need only demonstrate that he 'may be entitled to relief under any reasonable reading of the complaint,' *id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010)), and '*[t]he defendant bears the burden of showing that no claim has been presented*,'" *id.* (quoting *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)) (emphasis added).

Here, Defendants did not provide substantial briefing on the multiple constitutional claims raised in the Amended Complaint. Defendants' arguments amounted to approximately nine pages of text in the "Legal Argument" section of their moving brief and Defendants did not file a reply. (*See* Defs.' Moving Br. 11-21.) As noted above, the Court evaluates a motion to dismiss using a different legal framework than the standard used to assess a motion for a preliminary injunction. The Court previously denied Plaintiffs' motion for a preliminary injunction based on the initially-filed Complaint in this action; however, this does not mean Defendants will automatically prevail on a later-filed motion to dismiss the Amended Complaint. Accepting all the facts pled in the

Amended Complaint as true, the Court finds that Defendants have not carried their burden, at this juncture on a motion to dismiss, to demonstrate that Plaintiffs have failed to state their claims.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 24) is denied. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Date: April 30, 2018