UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER AND LORETTA QUICK, | Civ. No. 17-5595 (GC)(JBD) |
| Plaintiffs, | MEMORANDUM ORDER |
| v. | |
| TOWNSHIP OF BERNARDS, *et al.*, | |
| Defendants. | |

In this long-running case that has been repeatedly beset by trivial discovery disputes, plaintiffs Christopher and Loretta Quick challenge on First Amendment grounds a provision in a settlement agreement that resolved a prior federal civil action regarding the proposed construction of a mosque in Bernards Township, New Jersey (hereafter, the "Township"). The Court here resolves Plaintiffs' motion [Dkt. 100] to reopen the depositions of three Township officials on the ground that their counsel improperly invoked the attorney-client privilege during their depositions, which Plaintiffs say prevented their inquiry into the provenance of the challenged provision. In the same motion, Plaintiffs also ask the Court to compel the production of documents that the Township says it does not possess or control.

The Court finds it regrettable but necessary to delay this action further. With the benefit of briefing and oral argument, the Court will grant Plaintiffs' motion in part and deny it in part. More specifically, the Court will permit the limited reopening of the depositions of the three Township officials, as specified

Page 1 of 17

below. And the Court will deny Plaintiffs' motion to compel the production of the requested documents, but with directions to the Township.

## I.  BACKGROUND

This case arises out of a lawsuit by the Islamic Society of Basking Ridge ("ISBR") challenging the denial of an application to build a mosque in Bernards Township. [Dkt. 17 ("Am. Compl.")] ¶¶ 21–25. That lawsuit concluded with a settlement agreement, which this Court enforced through an order. *Id.* ¶¶ 26–27. The mosque was built thereafter.

Plaintiffs filed the current lawsuit challenging the terms of the settlement agreement, which barred them from making any commentary regarding Islam or Muslim at the public hearing to approve the site plan for the mosque. *Id.* ¶ 11. Under the settlement agreement, ISBR was to submit a site plan for construction of the mosque. *Id.* ¶ 28. The settlement agreement also required the Township's Planning Board to hold a public hearing to approve the site plan and required ISBR to provide notice of the meeting to any owner of real property within 200 feet of the proposed mosque site. *Id.* ¶¶ 30, 34. Plaintiffs, who reside within 200 feet of the site, alleged that the settlement agreement's provision prohibiting any commentary regarding Islam or Muslims at a public hearing violated their rights under the First and Fourteenth Amendments to the United States Constitution. *Id.* ¶ 1. Plaintiffs alleged that they wanted to comment on the impact of the proposed mosque on their home and neighborhood but were unable to do so because of the restriction in the settlement agreement. *Id.* ¶¶ 50–51.

After the Court denied Plaintiffs' motion for preliminary injunction [Dkt. 14] and the Township's motion to dismiss [Dkt. 29], the Township answered the complaint in May 2018 and discovery ensued. Since then, the parties have been mired in a series of discovery disputes.

In the current dispute, Plaintiffs contend that the Township hindered their inquiry into the settlement process by lodging improper attorney-client privilege objections and instructing their witnesses not to answer. Plaintiffs argue that despite this Court's prior order directing them not to do so, the Township interposed blanket objections on the asserted basis that all communications during the executive sessions were protected by the attorney-client privilege. For example, during the deposition of Kathleen Piedici (chairwoman of the Planning Board), the following exchange took place:

> Q: Did the planning board discuss the settlement agreement among themselves without the attorneys present?
>
> Mr. Ketterer: Again, given closed session[,] attorney/client privilege. You can rephrase the question.
>
> Mr. Thompson: I'm not going to rephrase it. You know, you're going to use that attorney-client privilege, but this is a factual question. It is not asking about any advice that the attorneys gave or any questions that they asked the attorney. It's what they discussed among themselves without the attorneys present.
>
> Mr. Ketterer: You're asking about a confidential executive session which is covered by the attorney/client privilege, okay? This only – executive session occurs with the attorney present in order to deal with this.

[Dkt. 100-4 ("Piedici Dep.")] 50:5–22. Plaintiffs argue that this exchange—among many other similar exchanges during the depositions of Piedici, Carol Bianchi

(former mayor), and John Carpenter (former Township Committeeman)—shows that the Township improperly invoked the attorney-client privilege with respect to all communications made during the executive sessions. [Dkt. 100-1 ("Pl. Br.")] at 8–9.

Relying on *Hinsdale v. City of Liberal, Kansas*, 961 F. Supp. 1490, 1494 (D. Kan. 1997), Plaintiffs argue that communications during the executive sessions are privileged only if they "related to the acquisition or rendition of professional legal services." Plaintiffs contend that the Township has failed to meet its burden of establishing that the communications it seeks to protect are covered by the attorney-client privilege. Accordingly, Plaintiffs ask the Court to continue the depositions of Bianchi, Piedici, and Carpenter. Plaintiffs also ask the Court to order the Township to produce draft agreements, term sheets, and proposals mentioned in executive session meeting minutes.

The Township opposes the motion and stands by its privileged-based objections. The Township argues categorically that communications during the executive sessions were made for the purpose of obtaining legal advice from counsel, and therefore are protected by the attorney-client privilege. [Dkt. 102 ("Def. Ltr. Br.")] at 4. With respect to the documents Plaintiffs seek, the Township asserts that it does not have them within its possession, custody, or control and, therefore, cannot produce them. *Id.* at 7–8.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) gives parties the right to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the scope of discovery is broad, it is not unlimited and may be circumscribed. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). For instance, as Rule 26 makes explicit, "a party may seek to avoid production of otherwise relevant information on the basis that the production is protected by a privilege." *Castellani v. City of Atl. City*, Civ. No. 13-5848 (JBS), 2016 WL 7131578, at *2 (D.N.J. June 30, 2016) (citing *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000)). If a party believes that the opposing party failed to answer a relevant and nonprivileged question asked during a deposition, or failed to produce relevant and nonprivileged documents, the party may move the Court to compel discovery. *See* Fed. R. Civ. P. 37(a)(3)(B)(i) & (iv). Decisions on motions to compel, like this one, "fall within the sound discretion of the Court." *United States v. Morales*, Civ. No. 17-7447 (BRM), 2019 WL 13251180, at *5 (D.N.J. July 31, 2019) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010)).

Privileges asserted in federal court are governed by Federal Rule of Evidence 501, which provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501; *Pearson v. Miller*, 211 F.3d 57, 65–66 (3d Cir. 2000) ("[F]ederal courts are to apply federal law of

privilege to all elements of claims except those 'as to which State law supplies the rule of decision.'").

As the party asserting it, the Township bears the burden of demonstrating that the attorney-client privilege applies to the communications it seeks to protect. *In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3d Cir. 1990). The elements of the attorney-client privilege are familiar: "[W]hen: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relat[e] to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection [may] be waived." *In re Impounded*, 241 F.3d 308, 316 n.6 (3d Cir. 2001) (citation omitted). "In determining whether the privilege applies in a given case, the ultimate question is whether a communication is one made for the purpose of obtaining legal advice or services." *Immunex Corp. v. Sandoz Inc.*, Civ. No. 16-1118 (CCC), 2017 WL 2466507, at *2 (D.N.J. June 7, 2017) (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000)).

Whether the attorney-client privilege applies is determined on a case-by-case basis. *Id.* (citations omitted). "[A] blanket claim of privilege that does not specify what information is protected will not suffice." *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 378 (N.D. Ill. 1999) (quoting *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992)).

### III. DISCUSSION

Plaintiffs seek an order compelling (i) the continuation of the depositions of Bianchi, Piedici, and Carpenter; and (ii) the production of term sheets and draft settlement agreements from the Township's litigation against ISBR. The Court addresses each request in turn.

#### A. Request to Continue Depositions

Plaintiffs argue that the Township improperly foreclosed deposition testimony concerning discussions held during the executive sessions by objecting to every question on the subject and directing the deponents not to answer. [Dkt. 103 ("Pl. Reply")] at 7. As the party asserting the privilege objection, the Township bears the burden of establishing that Plaintiffs seek information protected by the attorney-client privilege. *In re Grand Jury Investigation*, 918 F.2d at 385 n.15. On the record before it, the Court concludes that the Township has failed—demonstrably—to meet its burden.

The Township's only attempts to justify its privilege invocations are conclusory statements—without citation to any authority—that negotiations regarding a settlement agreement or communications during the executive sessions are protected by the attorney-client privilege. *See* Def. Ltr. Br. at 4. During oral argument, the Township asserted—again, without any basis or authority—that the purpose of the joint executive sessions with the Planning Board and the Township Committee was for members to speak to their attorney, and therefore, any conversations that took place during those executive sessions must be protected by the attorney-client privilege. Rather than establishing how specific communications

were made in confidence for the purpose of obtaining legal advice, *see Immunex Corp.*, 2017 WL 2466507, at *2, the Township merely states that "the content of [Plaintiffs'] questions . . . are clearly seeking to understand the 'mechanics' of how settlement negotiations occurred, which would necessarily reveal communications between client and counsel." [Dkt. 102-1 ("Ketterer Aff.")] ¶ 3.

Courts have made clear that the "attorney-client privilege does not provide blanket protection from discovery. Only the relevant portions of the executive session meeting discussing confidential information disclosed to the attorney or advice from the attorney relating to pending or anticipated litigation are privileged from discovery." *Wilstein*, 189 F.R.D. at 380 (finding that the attorney-client privilege did not shield from discovery all communications by board members during a condominium board executive session to discuss their attorney's letter regarding pending litigation); *Larson v. Harrington*, 11 F. Supp. 2d 1198, 1201 (E.D. Cal. 1998) ("[T]he fact that confidential communications within the privilege may have been made at the board meetings does not cloak the entire proceeding in secrecy."). Moreover, "mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged." *Hinsdale*, 961 F. Supp. at 1494; *Wilstein*, 189 F.R.D. at 379. The privilege also does not extend to bare facts underlying a communication from attorney to client, so long as the client has also learned those facts independently of attorney-client privileged communications. *Antolini v. McCloskey, et al.*, Civ. No. 19-9038 (GBD), 2021 WL 5411176, at *10 (S.D.N.Y. Nov. 19, 2021).

Here, the attorney-client privilege would not categorically protect discussions among the Planning Board or Township Committee members themselves or the opinions, impressions, and conclusions of the Planning Board or Township Committee members based upon events that occurred during the executive sessions. *See Hinsdale*, 961 F. Supp. at 1494. Nor would they necessarily render privileged the members' communications with their attorney; for example, if some of their communications concerned non-legal, commercial, business, or other practical considerations relating to the mosque's construction. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) ("[B]ecause the purpose of the privilege is to promote the dissemination of sound legal advice, the privilege will extend only to advice which is legal in nature. Where a lawyer provides non-legal business advice, the communication is not privileged.").

The Court, accordingly, finds nothing objectionable—in the abstract—with Plaintiffs' counsel's questions on the following topics: (i) discussions among the Planning Board or Township Committee members about the settlement agreement, if they were not seeking legal advice (Piedici Dep. 49:6–8 ("Q: Was there any discussion about what the attorneys presented to you as a settlement agreement?"); [Dkt. 100-5 ("Bianchi Dep.")] 64:19–20 ("Q: Was there questions about the settlement agreement that you saw?")); (ii) personal opinions, impressions, and conclusions of the Planning Board or Township Committee members ([Dkt. 100-6 ("Carpenter Dep.")] 50:18–25 ("Q: [D]o you think it's appropriate that individuals who are going to comment at a public hearing regarding zoning application for the building of a mosque should be placed under the restriction, quote, No commentary

regarding Islam or Muslims will be permitted?")); and (iii) the mechanics or process of settlement negotiations between the Township and ISBR (Bianchi Dep. 60:8–10 ("Q: I'm on the outside looking in. Just describe for me the process that was used to arrive at a settlement."), 23–25 ("Q: Did Mr. Chaudry, or any of the ISBR attorneys, appear before the township committee during the negotiation process?"); Carpenter Dep. 39:25–40:1 ("Q: Would you describe for me the - - the mechanics of negotiating with ISBR and Mr. Chaudry?")). The Court also sees nothing at all improper with questions intended in part to confirm the absence of the attorney-client privilege. *See, e.g.*, Piedici Dep. 50:5–7 ("Q: Did the planning board discuss the settlement agreement among themselves without the attorneys present?").

It may well be that some of the questions from the members of the Township Committee and Planning Board were "made for the purpose of seeking advice or a legal opinion." Def. Ltr. Br. at 4–5. And so it may well be that some of the discussions during the executive sessions are protected by the attorney-client privilege. Conversely, it may well be that some of the discussions during the executive sessions are *not* protected by the privilege. But given the Township's blanket objection to all questions on the topic and its directions to the deponents not to answer, we do not know: The Township has failed to establish a factual record enabling this Court to decide the privilege questions. This failure is particularly problematic in light of this Court's prior order:

> [T]here shall be no wholesale objection that would prevent the depositions from taking place or prevent the witnesses from answering questions that are not the subject of specific privilege objections. It also means that if instructed not to answer a question based on privilege, the witness should nonetheless be prepared to answer properly posed

> questions intended to confirm the existence of the privilege, *i.e.*, with regard to who was present at the time of the communication or the general subject matter of what was discussed. The parties are cautioned that anyone asserting an attorney-client privilege or attorney work product objection must be prepared to substantiate that objection.

[Dkt. 55] at 12. Upon review of the relevant deposition transcripts, the Court agrees with Plaintiffs that the Township did exactly what this Court instructed it not to do: It lodged wholesale objections to revealing any communications that took place during the executive sessions, then failed to demonstrate the factual predicates of its invocation of the attorney-client privilege. Counsel is cautioned that future failures to comply with the Court's directives on this score may warrant sanctions. *See, e.g.*, *Specht v. Google, Inc.*, 268 F.R.D. 596, 599–603 (N.D. Ill. 2010) (imposing sanctions on counsel for, among other things, improperly asserting the attorney-client privilege during depositions, and instructing the witness not to answer based on "an untenable and overly broad definition of attorney-client privilege").

Switching gears somewhat, the Court equally is unpersuaded by the Township's position that Plaintiffs improperly sought legal conclusions from its fact witnesses. Under Rule 30(c)(2), "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Accordingly, even if Plaintiffs' questions called for a legal conclusion, it was improper for the Township's counsel to instruct his clients not to answer. *See Catherine Heagy, et al. v. Burlington Stores, Inc. et al.*, Civ. No. 20-2447, 2021 WL 5399910, at *7 (E.D. Pa. Nov. 17, 2021) (declining to adopt a more expansive

approach than that set forth in Rule 30(c)(2) and finding that the defendant's counsel improperly instructed a fact witness not to answer a question on the basis that it required a legal conclusion).

Furthermore, upon the Court's review of the deposition transcripts, most of Plaintiffs' questions that prompted objections from the Township because they purportedly called for a legal conclusion did not, in fact, do so. Instead, they sought the opinion and impressions of the Township officials on the settlement agreement provision at issue, but did not seek to draw a conclusion on the ultimate First Amendment question. *See, e.g.*, Carpenter Dep. 50:18–25 ("Q: "As a member of the - - as a former member of the planning board and an official of the township committee, do you think it's appropriate that individuals who are going to comment at a public hearing regarding zoning application for the building of a mosque should be placed under the restriction, quote, No commentary regarding Islam or Muslims will be permitted?"). Moreover, "[t]he fact that the lay opinion testimony bears on the ultimate issue in the case does not render the testimony inadmissible." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997). And in any event, the ultimate admissibility or inadmissibility of deposition testimony is not before the Court at this time; the question is whether Plaintiffs may obtain answers to their questions. The Township's argument that Plaintiffs improperly sought legal conclusions from the Township officials is, accordingly, unpersuasive. Even if Plaintiffs' questions called for a legal conclusion, counsel for the Township should not have instructed the witnesses not to answer on that basis.

For the reasons described, the Court finds it appropriate to re-open the depositions of Bianchi, Piedici, and Carpenter for the limited purpose of examining them about the settlement negotiations. Each deposition will be conducted at a time and place mutually convenient for all participants, but all depositions shall take place no later than August 18, 2023. Moreover, each deposition shall be limited to 60 minutes of on-the-record testimony. On the Court's review of the original deposition transcripts, that amount of additional time is more than enough.[1]

The Court emphasizes that some (perhaps many) of the communications at issue may be subject to a valid invocation of the attorney-client privilege. If the Township is to invoke the attorney-client privilege, however, it must do so properly, on a question-by-question, communication-by-communication basis, with a factual foundation for each objection, and with a record sufficient to enable the Court to decide whether the invocation is proper. If necessary, counsel for the Township should take a break to speak to his clients to understand the factual foundation for any privilege objection, and to confirm that the communication is in fact protected by the privilege. For each objection that he asserts based on the attorney-client privilege, counsel for the Township also is directed to prepare a privilege log

---

[1] Lest it be unsaid, this Court will not view favorably any obstreperous or bad-faith efforts by the deponents or counsel to run out the clock on the Court's time limitation.

documenting the approximate date of communication, individuals involved in the communication, and the general subject matter of the discussion.[2]

### B. Request to Compel Production of Draft Settlement Documents

Plaintiffs also ask the Court to compel the Township to produce any term sheets or draft settlement agreements discussed in the executive session minutes. Here, as the party seeking to compel the documents, Plaintiffs bear the burden of establishing that the Township is in possession, custody, or control of the documents, *i.e.*, "[it] has the legal right or ability to obtain the documents from another source upon demand." *Microsoft Corp. v. Softicle.com*, Civ. No. 16-02762 (MCA), 2017 WL 4387376, at *7 (D.N.J. Oct. 2, 2017). Plaintiffs argue that the documents at issue are in the Township's control because under New Jersey's ethics rules, a law firm is required to maintain a client's records for seven years after the case has closed. Pl. Reply at 11. Because the Township has the legal right to the documents as part of the case file, Plaintiffs say the Township should be able to obtain them and produce them here.

---

[2] Counsel complains that he cannot prepare a log of privileged discussions at the executive sessions because he was not present at the meetings and his clients do not have access to any record of the attorney-client conversations. Ketterer Aff. ¶ 7. This excuse is unfounded and unacceptable. As noted above, it is the Township that has the burden of establishing that a particular communication was legal advice or for the purpose of seeking legal advice, and was intended to be and was kept confidential. *See Hinsdale*, 961 F. Supp at 1494. At the very least, counsel should discuss with his clients the conversations that took place during the executive sessions and identify which, if any, portions of those discussions, were for the purpose of obtaining legal advice. In all events, counsel must be prepared to justify his privilege assertions with facts.

Plaintiffs' point is well taken, but "[t]he Court cannot compel the production of things that do not exist. Nor can the Court compel the creation of evidence by the parties who attest that they do not possess the materials sought by an adversary in litigation." *Oke v. Garman*, Civ. No. 18-310, 2019 WL 6328022, at *4 (M.D. Pa. Nov. 26, 2019) (citation omitted). The Township has represented directly to this Court that it cannot produce the documents that Plaintiffs want because it does not have them. Def. Ltr. Br. at 7. The Township submitted a certification from its former Municipal Clerk stating that she "conducted a diligent search" of the Township's files to identify copies of any draft settlement agreements or settlement terms sheets in its custody or control, but was unable to locate such documents. [Dkt 102-2 ("Pisano Aff.")] ¶ 4. Counsel for the Township also submitted a certification stating that following a "good faith search," he and his client confirmed that the Township does not maintain copies of any term sheets or draft settlement agreements. Ketterer Aff. ¶ 6. Moreover, Plaintiffs have not identified any evidence that the Township in fact possesses or has access to the documents. *Harris v. Koenig*, 271 F.R.D. 356, 371 (D.D.C. 2010) ("Lack of evidence showing that a producing party is in fact in possession of a document is grounds to deny a motion to compel.") (citation omitted).

On the present record, the Court denies Plaintiffs' motion to compel the production of the term sheets and draft settlement documents. The Court will, however, direct the Township to engage further in a good faith attempt to seek those documents from the Township's former counsel who were involved in the settlement negotiations or meetings related to settlement, and to produce them to

Plaintiffs if they are available. If they remain unavailable following a diligent follow-up search, the Township should so certify to Plaintiffs.

## IV. CONCLUSION

This case was filed nearly six years ago; it should have been long since resolved. Instead, it remains mired in discovery. With no view on the ultimate merits of Plaintiffs' claims, the Court expresses its fervent desire for the parties and their counsel to work together in good faith to position this matter—finally—for a resolution. *Cf.* Fed. R. Civ. P. 1.

For the reasons stated, and for good cause shown,

IT IS on this 28th day of June, 2023,

ORDERED that Plaintiffs' motion to continue the depositions of Bianchi, Piedici, and Carpenter [Dkt. 100] is GRANTED; and it is further

ORDERED that the parties are directed to meet and confer regarding scheduling the depositions and to complete the depositions by no later than August 18, 2023; and it is further

ORDERED that upon scheduling the depositions, the parties promptly shall email chambers at jbd_orders@njd.uscourts.gov and identify the dates on which the depositions will be conducted; and it is further

ORDERED that each deposition shall last no longer than 60 minutes of on-the-record testimony; and it is further

ORDERED that if counsel for the Township lodges any objections based on attorney-client privilege, counsel shall prepare a privilege log documenting the approximate date of the communication, individuals involved in the communication,

and the general subject matter of the discussion for each communication at issue; and it is further

ORDERED that Plaintiffs' motion to compel production of draft settlement agreements and term sheets [Dkt. 100] is DENIED; and it is further

ORDERED that counsel for the Township is directed engage in a good-faith attempt to seek the documents that Plaintiffs request from the Township's former counsel and to produce them to Plaintiffs if they are available, or certify to Plaintiffs if they are unavailable; and it is further

ORDERED that the Court will conduct a telephone status conference with counsel on September 7, 2023 at 10:00 a.m.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE